LODEMA GROAT, Respondent,

*vs.*

NELSON H. PALMER, Impleaded with GEORGE W. SPROAT, Appellant.

APPEAL FROM THE RACINE CIRCUIT COURT.

In an action against two makers of a joint note, though each setting up a different defence, one defendant cannot call his co-defendant to prove that he had been discharged from the note in question by the payee and that said co-defendant had assumed the payment of the whole note.

Section 299 of the code commented upon.

This was an action commenced upon a promissory note, (hereinafter set forth,) by the respondent, by the name of Lodema Jones. After the commencement of the suit she intermarried with one Groat, and on application to the court, it appearing that the note was her separate property, she was allowed to prosecute her action by the name of Lodema Groat.

The complaint set forth the making of the note ; that Jones died on the first day of July, A. D., 1854, and by his will bequeathed all his personal property to the plaintiff, who was the wife of the said Jones, and appointed her his executrix. That said will was duly admitted to probate and the plaintiff took upon herself the duties of executrix. That said Jones was the owner of said note when he died, and that by virtue of said last will and testament the plaintiff then became and now is the owner and holder of said note, that $220 had been paid thereon, and demanded judgment for the balance.

The defendant, Palmer, answered, denying that he was indebted on said note. That about the time said note became

due and in the life-time of the said A. B. Jones, mentioned in plaintiff's complaint, he, the said Jones, owning and holding said note, entered into a contract with said Palmer, whereby, for a valuable consideration, the said Jones then and there did release said defendant, Palmer, from all liability on account of said note, and that the defendants would give evidence on the trial of said cause, of the payment and release aforesaid, &c.

The defendant, Sproat, answered that he was not indebted on said promissory note, that it was without consideration. That the endorsements thereon were made without the knowledge or consent of the defendants, and that they were fraudulent and were for payments made on other and different notes, &c.

On the trial the plaintiff introduced the following note in evidence:

$1,000.

For value received we promise to pay A. B. Jones, Jr., or bearer, on the 15th day of April, A. D. 1851, one thousand dollars, with interest at seven per cent. from date per annum.

GEO. W. SPROAT,
N. H. PALMER.

WATERFORD, Wisconsin, January 15, 1850.

On which were several endorsements, and there was due there on the day of trial, $1,338 12.

And here rested her cause.

The defendant, Nelson H. Palmer, then called Geo. F. Newell as a witness, who testified as follows: I know parties, and knew A. B. Jones, Jr., in his life-time; all reside at Waterford. In 1849, Jones was in the mercantile business at Waterford. In February, 1850, I went to California—Jones went with me. Shortly before we left, the defendants purchased out Jones stock of goods and went into the mercantile business. I

returned to Waterford from California, November, 1851. I found Jones at Waterford, very much out of health, and after examining him, advised him to seek a warmer climate. Defendants were in business as when I left. Jones made up his mind to go south, provided he could arrange his business so as to suit him. Said if he could get Palmer to go into the mill, he would feel safe to leave the mill with him, and negotiations were entered into by him with Palmer for taking the mill. In December, 1851, in defendants' store, defendants Jones and myself being present, a bargain was made between Jones and Palmer relating to the mill. It was agreed upon at that time, but not put into writing. Palmer stated to Jones that he would not take the mill unless relieved entirely from the business of the store. Jones then agreed with Palmer that he would give him two thousand dollars for his interest in the store and release him from all liabilities of Sproat and Palmer to him, and at the same time agreed with Sproat that he would transfer that interest to him, Sproat, for the same amount and take Sproat's and Newell's notes for the same. That Palmer should lease the mill of Jones for a term of years at $800 per year, and that he would endorse upon said lease $2,000 for said interest of said Palmer in said store of Palmer & Sproat, and that he, Jones, would release Palmer from all liabilities of the firm of Sproat & Palmer to him, Jones. This arrangement was agreed to, all around, by all the parties. A few days afterwards, Jones called upon me and told me he had the papers prepared relating to the matter, and I went with him to the store and executed the notes that I was to execute; I can't tell dates of notes; Palmer's interest ceased in the store after the papers were executed, and Sproat continued to carry on business there; sometime afterward I took an interest there with him; Palmer afterwards took possession of the mill and has continued in it ever since. (The lease from Jones to Palmer, of the mill, was here shown to

this witness; also the notes executed by Sproat and Newell for the interest of Palmer in the store.) The witness further testified that he was a subscribing witness to the lease and that he saw it executed at the time it bears date. The notes produced are the notes given by Sproat and Newell, to Jones for Palmer's interest in the store. (The notes and lease all bear date December 16, 1851, and the notes are signed by George W. Sproat and George F. Newell, and are made payable to A. B. Jones, Jr., or bearer.) There was an endorsement on the lease, made at or about the time the lease was executed, of two thousand dollars, to apply on rent and in full for two and a half years' rent.

On his cross-examination, he testified that the notes for $2,000 given by Sproat and Newell to Jones, were to be endorsed on lease of mill, in full, for two and a half years' rent, and that in the fall of 1852, Jones left Waterford for Florida, and I never saw him afterwards. His wife, the plaintiff, went with him.

Henry Luddington and Charles Moe were sworn for plaintiff and testified as to Jones' statements in regard to Palmer's being free and clear from debt, after the sale of his interest in the store.

The defendant, Palmer, then proposed to call George W. Sproat, one of the defendants, as a witness for the defendant, Palmer, to prove that Palmer was discharged from the note in question, by Jones, at the time of the sale of his interest to Jones, and that Sproat assumed the payment of the whole of said note. To which offer the plaintiff's counsel then and there objected, and the court sustained the objection, and the defendant, Palmer's counsel, excepted.

The defendant, Palmer, further offered to prove by said Sproat, that the note in question was given to Jones on the purchase of the original stock of goods by Sproat & Palmer of Jones, in A. D. 1850. To which the plaintiff's counsel

objected. The court sustained the objection, and the counsel for the defendant, Palmer, excepted.

The defendant, Palmer's counsel, further offered to prove by said Sproat, that at the time of said sale from Palmer to Jones, on the 16th day of December, A. D. 1852, a full and complete inventory of the goods, credit and effects of Sproat & Palmer, and a full statement of their affairs was made and recorded in a book, and that it was afterwards burned up and destroyed at the time Sproat's store was burned in 1855, to which plaintiff's counsel objected, and the court sustained the objection, and the counsel of the defendant, Palmer, excepted.

The defendant then rested his cause, and the plaintiff called George Groat, Frederick A. Meage, Ira A. Rice, and Mariah Hinebau, who severally testified to statements made by Palmer, at different times, in regard to this note, and which the plaintiff claimed recognized his liability thereon.

After argument of counsel the cause was submitted to the jury under the charge of the court.

The jury returned a verdict for the plaintiff, on which judgment was rendered, from which the defendant, Palmer, appealed.

*Carey, Farr and Evans*, for Appellant.

1. A party may be examined on behalf of his co-defendant as to any matter in which he is not jointly interested or liable with such co-defendant and as to which a separate and not joint verdict or judgment may be rendered. Code of Proceedure, § 299.

The cause of action as sued upon in this case was originally a joint note, but the defence as attempted to be proved, was that this joint contract had been changed by the parties into a several obligation of one of them, and if it had been so changed, a separate verdict and judgment could be ren-

Groat vs. Palmer.

dered in the cause. Session Laws of 1851, chap. 381. The defendant Sproat was not jointly interested with Palmer in this defence : if established it doubled the liability of Sproat, hence his interest was not with Palmer, but adverse to him and the defence interposed by him. *Beal vs. Finch et al.*, 1 Kernan 128; *Lefevre vs. Bingham and Crawford,* 10 How. Pr. R., 385; *Selkirk vs. Waters, and others,* 5 How. Pr. R., 296.

2. It was competent for the defendant Palmer to show by Sproat that the inventory made at the time Palmer sold to Jones, was afterwards destroyed by fire, to lay the foundation for giving parol evidence of its contents. The Judge erred therefore in ruling it out.


*W. P. Lyon,* for Respondent.

1. Sproat is not a competent witness for the co-defendant Palmer, under sec. 299 of the code, for the reason that a joint judgment *can* be rendered in the action against both defendants ; whereas, sec. 299 makes a defendant a competent witness for his co-defendant, only in those cases "where a separate *and not joint* verdict or judgment can be rendered. *Beal vs. Finch,* 1 Kernan 141. Opinion of Denio J.; *Munson vs. Hegeman,* 10 Barbour, 112 ; *Merrifield vs. Cooley,* 4 How. Pr. R., 272 ; *Mechanics' & Farmers' Bank vs. Wilbur,* 2 Code, Rep. 33.

2. No decision in New York has gone to the extent of admitting a defendant in an action on a joint contract as a witness for his co-defendant, for any purpose whatever. But the contrary was expressly held in *Mechanics' and Farmers' Bank vs. Wilbur,* 2 Code, Rep. 33, above cited. The decisions admitting defendants to testify for each other, has been confined to actions of tort, and to actions upon joint and several contracts—and such testimony has been confined to those matters in which the witness had no interest in common with

the defendant in whose behalf he was testifying. (See case above cited.)

3. Sproat was not a competent witness for Palmer to prove that Palmer had been released from his liability upon the note, for the reason, that whatever consideration Palmer paid for such release, operated as a payment upon the note to the amount so paid; and would reduce the judgment against Sproat to that extent.

That *some* consideration was paid for such release must be presumed, otherwise the release would be void. Session Laws, 1851, Chap. 281 ; *Dean vs. Thornton,* 3 Kernan, 266.

*By the Court,* SMITH, J.　The only ⌐question arising upon the record in this case, is upon the ruling of the judge on the trial below in rejecting the evidence offered to be proved by Sproat called as a witness by his co-defendant Palmer.

Section 299 of the code of procedure provides as follows : " A party may be examined on behalf of his co-plaintiff or of a co-defendant, as to any matter in which he is not jointly interested or liable with such co-plaintiff or co-defendant, and as to which a separate, and not a joint judgment can be rendered."

The proper determination of this question requires a construction of this provision of the code. Upon a corresponding provision in the code of New York, much controversy has been had, and a contrariety of opinion has obtained.

A similar provision in the New York code, owing to the different constructions put upon it, was amended from time to time, until at last it assumed the shape which has been literally copied into our code, as above cited.

It is hardly worth while to go over the various decisions made upon it, at different times, for it can hardly be said that the proper construction is yet permanently settled in New

York. See 8 Barb. S. C. R., 655, 10 id. 290, 5 How. Pr. R. 296, 4 Sanf. 616, 10 Barb., 112, 5 How. 407, 1 Kernan 128, 141, 3 id. 266.

In *Beal vs. Finch et al.*, 1 Kernan, 128, Mr. Justice Parker, held, that in an action for tort, such as assault and battery, " A party may be examined by his co-defendant, as to any matter as to which a separate, and not joint verdict or judgment can be rendered, and as to any matter in which he is not jointly interested or liable with such co-defendant." That case also decided, that a co-defendant in an action for tort was a competent witness to be called and sworn by his co-defendant in all cases, the only question being as to what matters his testimony was admissable in.

In *Dean vs. Thornton*, 3 Kernan 266, it was held that in an action of tresspass against two for cutting timber, it was alleged that one of the defendants purchased the timber of the plaintiff and employed the other to aid in carrying it away, and it was held, that neither of the defendants was a competent witness for the other to prove the purchase of the timber. I am not aware of any decision in New York of a later date than this, which bears upon the subject.

I do not understand that the objection in this case went to the competency of Sproat to be sworn, but only as to his competency to prove the particular matters offered in evidence through him, by his co-defendant Palmer.

It is not surprising that legal minds become perplexed in attempting to construe an enactment which at once sweeps away qualifications and conditions which we have been in the habit of regarding as the strongest and surest safeguards to the purity of human testimony, in its application to the administration of justice. But it becomes our duty to make our best efforts to ascertain and carry out the objects sought to be attained, and in the manner prescribed by the law. This provision of the code permits a party to be examined in behalf

of his co-plaintiff or co-defendant, as to any matter in which he is not jointly interested, or as to which a separate and not a joint verdict or judgment may be rendered.

The cause of action in this case was upon a joint (not a joint and several) promissory note, and although one of the defendants pleaded a separate release to himself, and the other that the note was without consideration, it cannot be denied that the contract sued upon, the cause of action set out in the plaintiff's complaint is one in which both the defendants are jointly interested, and is one in which a joint judgment can be rendered. Now I am not aware that any decision in New York has gone so far as to permit co-defendants upon a joint contract to be witnesses for each other, for any purpose. If one defendant upon a joint note could prove a separate defence for his co-defendant, we might have the extraordinary spectacle of one defendant pleading accord and satisfaction as to himself, and calling upon his co-defendant to prove it, and the other, some other alleged defence peculiar to himself, and making a like call upon his co-defendant. It is not to be presumed that the code is liable to such an absurdity. There are many cases arising out of, or sounding in contract, where under the code now, as in equity jurisprudence formerly, defendants, having different interests, may be made parties, and as to whom separate judgments can be, and ought to be rendered. Where these interests and liabilities are entirely distinct, defendants may be witnesses for each other, as was formerly the case in equity proceedings. But is it possible that under this provision of the code, it was intended that two joint endorsers of a promissory note, might put in a separate defence to a joint action, each to be used as a witness on call, to prove the defence of the other? We are not prepared to accede to such an interpretation of the statute.

The defendant, Palmer, on the trial below, proposed to prove by his co-defendant, Sproat, that he, Palmer, was discharged

from the note in question by Jones, at the time of the sale of his interest in the goods to Jones, and that Sproat assumed the payment of the whole note. The court rejected the offer, and we think properly. The same principles of public policy which would prevent Sproat from being a witness to invalidate the note as against the other joint maker, remain unimpaired since, as before the adoption of the code. Such a rule would allow one of the joint makers of a note, who had become insolvent, to swear to a release, or satisfaction as to the other joint maker who was solvent, and the chief value of such contracts as commercial paper, be destroyed. Admitting that the statute allows a release of one of the makers, without discharging the other, we think that it must be shown in some other way, notwithstanding. (See 299 of the code.) Nor do we think that chapter 381 of the session laws of 1851 applies to this case. That statute was not intended to change a joint contract into a several one. It only allows a creditor to release one of several joint debtors from the amount which *by the contract* the person so released was in equity bound to pay. But it did not authorize the conversion by parol, of a joint promissory note into a several note, obligatory upon one of the makers only, for the whole amount. The plea of the defendant Palmer was not in view of the act of 1851. He does not set up that he had paid to the holder of the note the amount for which he was originally in equity bound to pay, but he sets up a new agreement, by which he, for a new consideration, (not the amount which he was in equity bound to pay) was discharged, which he offers to prove by Sproat, and also that Sproat assumed the payment of the whole. That is, that for a valuable consideration Jones had released him from his part of the note, and Sproat had assumed the part released and become solely bound for the whole. And he offers to prove by Sproat that Palmer had satisfied Jones for his part, leaving Sproat only liable for that portion which by the terms

of the contract was equitably due from him, yet he had assumed the payment of the whole, notwithstanding his answer of record that there was no consideration for the note.

Although the act of 1851 may authorize the release of one joint maker of a contract, by the payment of the amount for which he is equitably liable, it does not authorize the admission of parol evidence to vary the terms of a written contract. The evidence offered, proposed in effect to do this, and the judge rightly rejected it.

Judgment affirmed with costs.